# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2841

_____

| | | |
|---|---|---|
| Steffano James, | * | |
| | * | |
| Petitioner - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Michael Bowersox, | * | |
| | * | |
| Respondent - Appellee. | * | |

_____

Submitted:  April 19, 1999

Filed: August 19, 1999

_____

Before McMILLIAN, LOKEN, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Missouri inmate Steffano James of first degree murder and armed criminal action, and he was sentenced to life in prison. The trial court denied his motion for postconviction relief under Missouri Supreme Court Rule 29.15, and the Missouri Court of Appeals summarily affirmed the conviction and the denial of Rule 29.15 relief. After the Supreme Court of Missouri denied a writ of habeas corpus, James filed this petition for federal habeas relief. He now appeals the district court's[1]

_____

[1]The HONORABLE E. RICHARD WEBBER, United States District Judge for the Eastern District of Missouri.

denial of that petition, arguing that the prosecutor's inflammatory closing argument deprived him of due process, and that trial counsel provided him ineffective assistance by not objecting to the prosecutor's closing argument and by not interviewing and calling a witness.[2]  We affirm.

## I.  The Prosecutor Misconduct Issue

In February 1992, James drove to St. Louis accompanied by his girlfriend, Karen Gatewood, and her sister, Katherine Tibbs.  James was a Los Angeles drug distributor, and the trip involved his drug trafficking activities in St. Louis.  The trip ended with their van stopped on a residential street, where James had parked to count $100,000 in cash delivered by Leslie Lloyd, a St. Louis drug dealing customer.  James and the two sisters were in the van with Lloyd.  One of the trio shot Lloyd twice, killing him. They drove back to Los Angeles, disposing of the murder weapon along the way.  The sisters later accused James of the shooting, and in October 1993 he was tried for first degree murder, felony second degree murder, and armed criminal action.  The sisters testified that James shot Lloyd to steal the $100,000.  James testified that Katherine Tibbs was the girlfriend of his California supplier, and she shot Lloyd while James was busy counting the money.  To resolve the first degree murder charge, the jurors had to decide whether to believe James or the sisters.  Thus, most of both counsels' lengthy closing arguments addressed the credibility of James and the sisters.  James argues that two comments by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

---

[2]The district court received James's petition on April 17, 1997.  Therefore, it was timely under the one-year limitations period enacted in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See 28 U.S.C. § 2244(d)(1); Nichols v. Bowersox, 172 F.3d 1068, 1073, 1077 (8th Cir. 1999) (en banc).

The first comment occurred during the prosecutor's opening argument. Attacking James's credibility, the prosecutor contrasted his mild-mannered appearance in court with his criminal history:

> This armed robber looked very meek in court, didn't he, so soft-spoken like that and all. That was all another ploy. Do you think he's really like that? Do you think you're convicting the man in the pretty blue suit over here or do you think you're convicting a big time, drug dealing, murdering, robbing slime?

The second comment occurred during the prosecutor's rebuttal. During the defense closing argument, James's attorney argued the sisters should not be believed because:

> There's a code of silence in the drug world. You don't snitch on a big time drug dealer because he'll kill you, plain and simple. They [Tibbs and Gatewood] got no problem coming in on him. He's a low-level runner. They're not worried.

Counsel's point obviously was that the sisters must have lied about James being a "big time drug dealer" because if he were big time they would have been afraid to testify against him. Responding to that point, the prosecutor argued in rebuttal:

> And you know what, [defense counsel is] right, [James will] kill them for testifying. He'll kill them in a split second. You know he knows where to find them. And you know he will kill for what they did. For coming in here and testifying they're dead. Those girls are dead. Those girls are dead, and you know it. . . . They're dead, [Steffano], aren't they?

James argues the trial court "plainly erred and abused its discretion in failing to declare a mistrial *sua sponte*" because the prosecutor's comments improperly inflamed the passions of the jury. The merits of this contention are affected by the applicable

standard of review. At trial, defense counsel did not object to the prosecutor's comments. However, James did raise the issue on direct appeal. The Missouri Court of Appeals, conducting plain error review, affirmed, labeling the contention "without merit." The issue is not procedurally barred because it was raised on direct appeal. See Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir.), cert. denied, 118 S. Ct. 189 (1997). But in conducting federal habeas review, we may not simply conduct our own plain error review *de novo*, as James urges. In the first place, our review of state convictions is limited to federal constitutional errors, in this case, an alleged due process violation. We do not have the same supervisory authority over the conduct of Missouri prosecutors that we have over federal prosecutors, or that the Missouri appellate courts have over Missouri prosecutors. In the second place, AEDPA mandates a deferential review of state court decisions. We may not grant habeas relief on a claim that was adjudicated on the merits in state court unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). An "unreasonable application" is one that, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Long v. Humphrey, 1999 WL 494096, at *2-3 (8th Cir. July 14, 1999).[3] The summary nature of the Missouri Court of Appeals opinion does not affect this standard of review. See Wright v. Angelone, 151 F.3d 151, 156-57 (4th Cir. 1998); Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.), cert. denied, 118 S. Ct. 72 (1997).

The absence of a timely objection is particularly significant to a claim of prosecutor misconduct in closing argument. Defense counsel heard the alleged misconduct and was in a far better position to judge its significance to the trial than an

---

[3]On April 5, 1999, the Supreme Court granted a writ of certiorari to resolve a conflict among the circuits as to the proper interpretation of § 2254(d)(1). See Williams v. Taylor, 119 S. Ct. 1355 (1999).

appellate court reading a cold transcript. The trial court also heard the alleged misconduct and likewise was in a better position to judge its significance. The trial court has the power to intervene *sua sponte*, for example, with a criticism of the prosecutor or a cautionary instruction. But that sort of interruption risks frustrating defense counsel's tactical decision not to object. See Darden v. Wainwright, 477 U.S. 168, 182-83 & n.14 (1986). The combination of these factors -- the strict due process standard of constitutional review, the deferential review mandated by AEDPA, and our less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial -- calls for an exceptionally limited review of this issue. Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial.[4]

Viewing the record by this strict standard, it is clear we must affirm. The prosecutor's first statement -- that James was "a big time, drug dealing, murdering, robbing slime" -- was consistent with the trial evidence and therefore unobjectionable, except for use of the distasteful word "slime." We strongly disapprove of such epithets, like the "mean-spirited and unnecessary" reference to "garbage" in Preston v. Delo, 100 F.3d 596, 602 (8th Cir. 1996), cert. denied, 118 S. Ct. 357 (1997). But our displeasure stems from a belief that it is wrong for the State to refer to any citizen in such a contemptuous manner, and that it is beneath the dignity of an officer of the court to engage in such back-alley name calling. Those are concerns that may call for use of our supervisory jurisdiction over federal prosecutors, but they do not equate with

---

[4]The Supreme Court conducted plain error review of a prosecutor's closing argument on direct appeal in United States v. Young, 470 U.S. 1, 15 (1985), commenting that such review is limited to unpreserved errors of a "particularly egregious" nature. By contrast, Batson violations, another type of prosecutorial misconduct committed in the presence of defense counsel and the trial court, are waived unless raised before trial commences. See United States v. Parham, 16 F.3d 844, 847 (8th Cir. 1994).

the due process standard of a fundamentally unfair trial, which turns instead on whether the jury has the common sense ability to put aside a particular type of overzealous advocacy with the help of the court's standard instruction that arguments of counsel are not evidence. Here, the prosecutor could properly have said, "Don't believe James because he's a big time drug dealer, murderer, and robber." The trial court did not render the lengthy trial fundamentally unfair by failing to declare a mistrial *sua sponte* when the prosecutor added the inappropriate epithet, "slime."

The prosecutor's other comment came in rebuttal. Defense counsel's argument invited some rebuttal, which is no doubt why defense counsel did not object to the comment made. James argues the comment improperly inflamed the jury by suggesting they should convict James to keep him from killing Gatewood and Tibbs for testifying against him. But that is by no means the only plausible interpretation. Defense counsel argued the sisters must have lied in calling James a big time drug dealer or they would have been afraid to testify. The prosecutor's response could be construed as saying the sisters took that risk and now James would have them killed no matter what verdict the jury returned. We cannot be sure how the jury interpreted the ambiguous arguments of both counsel; indeed, the most logical inference is that the jury paid little if any attention to this one remark toward the end of seventy-two transcript pages of closing argument. Therefore, we cannot conclude the trial court's failure to declare a mistrial *sua sponte* "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181. As the Supreme Court said in Donnelly, 416 U.S. at 646-47:

> [C]losing arguments of counsel, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy

-6-

exhortation, will draw that meaning from the plethora of less damaging interpretations.

## II.  Ineffective Assistance of Counsel

James contends that his trial counsel was constitutionally ineffective in two respects.  First, he argues that a competent attorney would have objected to the prosecutor calling James a "slime" and stating that Tibbs and Gatewood were "dead" for testifying against him.  The state postconviction trial court concluded that "the State's [closing] argument was proper and [James] was not prejudice[d] therefrom." For the reasons discussed in Part I, we conclude the state court's decision was not an "unreasonable application" of the Supreme Court's standard for resolving ineffective assistance of counsel claims.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).

After he was shot, Lloyd staggered onto Anne Keefe's front yard, and she called 911 to report the shooting.  James argues that counsel was ineffective in failing to interview and call Keefe as a witness because her testimony was obviously relevant and might have supported his defense that Tibbs shot Lloyd.  In rejecting James's motion for postconviction relief, the state court found that Keefe's testimony would have been cumulative because, "At best, she would have seen the victim sometime after the shooting was over. . . . Anne Keefe's testimony would not have refuted the testimony of the State's witnesses."  These findings are entitled to a presumption of correctness under AEDPA.  See 28 U.S.C. § 2254(e)(1).  James has not rebutted that presumption by clear and convincing evidence, nor has he made the showing required to warrant an evidentiary hearing on his federal habeas corpus claim.  See § 2254(e)(2).  James did submit to the district court the report of a police interview of Keefe shortly after Lloyd's murder.  Assuming that submission may properly be considered under § 2254(e), Keefe's statements in the report are consistent with the state court's findings.  Accordingly, the state courts did not unreasonably apply Strickland in rejecting this claim.

-7-

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.