# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3984

ALLEN A. MUTH,

*Petitioner-Appellant,*

*v.*

MATTHEW J. FRANK, Secretary,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 01 C 398—**Lynn Adelman**, *Judge.*

———————

ARGUED NOVEMBER 12, 2004—DECIDED JUNE 22, 2005

———————

Before BAUER, MANION, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.* Allen Muth and his younger sister Patricia married and had three children. After they abandoned the middle child, who was disabled, the State of Wisconsin petitioned to terminate their parental rights because of their incestuous parenthood. After the courts approved the termination, both Allen and Patricia were convicted of incest and sentenced to years in prison. In this petition for a writ of habeas corpus, Allen Muth argues that Wisconsin's incest statute is unconstitutional insofar as it

seeks to criminalize a sexual relationship between two consenting adults. The district court denied the petition. We affirm.

## I.

Allen Muth and his adult sister, Patricia, were arrested by the State of Wisconsin in 1997 and charged with incest in violation of Wisconsin law. The facts leading up to this arrest are not pleasant.[1] Among fourteen children in a dysfunctional family, Allen was one of the oldest and Patricia one of the youngest. During their childhood they were in and out of foster care, and they and several other siblings were involved in a cycle of sexual abuse and incest. Although they were separated for some length of time, at about the time Patricia reached the age of majority she and Allen became reunited and got married. During their marriage they had three children (apparently she had one other child prior to the marriage). The incestuous relationship came to the State's attention when their middle child, Tiffany, was "removed from her parental home and placed in foster care because [Patricia] and Allen had abandoned her at the home of a baby-sitter." *Allen M.*, 571 N.W.2d at 873.

After a series of progressive separation procedures, the State filed a petition to terminate Patricia and Allen's parental rights to Tiffany because of their incestuous parenthood of Tiffany. Neither Patricia nor Allen contested the evidence of their incest, and consequently the trial court found Patricia and Allen unfit. The evidence at that trial

---

[1] The preliminary facts set out here are derived from *State v. Allen M.*, 571 N.W.2d 872, 873 (Wis. Ct. App. 1997) (hereinafter *Allen M.*).

indicated that Tiffany was significantly underdeveloped and that "she was a non-verbal, three and one-half year old who behaved and physically appeared to be more like a two-year-old child. She was not toilet trained or able to feed herself and she displayed little or no emotion." *Id.* at 874. Other evidence indicated that the child was significantly neglected and that Patricia and Allen had no relationship with the child. The court concluded that Tiffany's best interests would be served by the termination of the parental rights of her biological parents.

On appeal to the Wisconsin Court of Appeals, Patricia and Allen challenged the constitutionality of Wis. Stat. § 48.415(7), which provides that incestuous parenthood is a ground for termination of parental rights.[2] The Muths claimed that the termination of their parental rights based on their incestuous parenthood of Tiffany denied them due process of law and their rights to equal protection of the law. The court denied those claims and affirmed the trial court. *Allen M.*, 571 N.W.2d 872.

Given the facts exposed in *Allen M.*, the State of Wisconsin arrested Allen and Patricia and charged them with incest, in violation of Wisconsin's criminal incest statute, which provides that:

> Whoever marries or has nonmarital sexual intercourse with a person he or she knows is a blood relative and such relative is in fact related in a degree within which

---

[2]  Wis. Stat. § 48.415 provides that: "Grounds for termination of parental rights shall be one of the following: . . . (7) Incestuous parenthood, which shall be established by proving that the person whose parental rights are sought to be terminated is also related, either by blood or adoption, to the child's other parent in a degree of kinship closer than 2nd cousin."

> the marriage of the parties is prohibited by the law of this state is guilty of a Class F felony.

Wis. Stat. § 944.06.[3]

Prior to trial, Allen moved to dismiss the criminal complaint against him, on the basis that Wisconsin's incest statute was unconstitutional insofar as it sought to criminalize a sexual relationship between two consenting adults. The trial court denied the motion and conducted a bench trial. Both Allen and Patricia were convicted on November 11, 1997. Allen was sentenced to eight years in prison and Patricia was sentenced to five years' imprisonment.

The Wisconsin Court of Appeals affirmed Allen's conviction in January 2000. In its opinion, the court noted that the issue before it was whether Wisconsin's incest statute was unconstitutional. *Wisconsin v. Muth*, 98-1137-CR, slip op. at 1 (Wis. Ct. App. Jan. 20, 2000) (hereinafter *Muth I*). The Court of Appeals also noted that it agreed with the trial court's conclusion that Allen Muth (hereinafter Muth) had no privacy right in having sexual relations with his sister but

---

[3] Wisconsin thus criminalizes a sexual and/or marital relationship as incest if the parties could not marry due to a close blood relationship. Section 765.03(1) of the Wisconsin Statutes, in turn, prohibits marriage between "persons who are nearer of kin than 2nd cousins. . . ." Wis. Stat. § 765.30(1). There is an exception to this prohibition of marriage for "first cousins where the female has attained the age of 55 years or where either party, at the time of application for a marriage license, submits an affidavit signed by a physician stating that either party is permanently sterile." *Id.*

Read together, these statutes criminalize sexual intercourse where the following blood relationships exist: parent/child; siblings; grandparent/grandchild; uncle or aunt/niece or nephew; and first cousins (with certain exceptions). At the time of Muth's conviction and sentencing, incest was a Class C Felony.

ultimately concluded that "we need not address [the trial court's conclusion] because we have already concluded in [*Allen M.*] that the State may legitimately prohibit incestuous relationships." *Id.* at 2. The Wisconsin Supreme Court denied Muth's petition for discretionary review.

Having exhausted all state remedies, on April 20, 2001, Muth filed this petition for a writ of habeas corpus with the United States District Court for the Eastern District of Wisconsin. He challenged the constitutionality of the statute that criminalized incestuous relationships. Before the completion of briefing by the parties, the United States Supreme Court issued its decision in *Lawrence v. Texas*, 539 U.S. 558 (2003). In that case, the Supreme Court held that a Texas statute prohibiting homosexual sodomy[4] was unconstitutional insofar as it applied to the private conduct of two consenting adults. *Id.* at 578-79.

---

[4] In his concurring opinion, our colleague suggests that the term "homosexual sodomy" is used by this court in a pejorative fashion. Use of the word sodomy or "homosexual sodomy" to discuss the sexual conduct *Lawrence* addressed is not original to this decision. The majority opinion in *Lawrence* used the term "sodomy" no less than seventeen times and the phrase "homosexual sodomy" twice. Justice O'Connor's concurring opinion described the Texas law (and similar laws) at issue in *Lawrence* as a law relating to sodomy twenty-four times. We also note that several federal cases and innumerable commentators post-*Lawrence* have described the holding of that case, or the Texas law at issue in the case, as relating to sodomy or, more precisely, homosexual (or some equivalent such as "same-sex") sodomy. *See, e.g., Williams v. Attorney Gen. of Ala.*, 378 F.3d 1232, 1236 (11th Cir. 2004), *cert. denied*, ___ U.S. ___, 125 S.Ct. 1335 (2005); *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004); *Anderson v. Morrow*, 371 F.3d 1027, 1034 n.4 (9th Cir. 2004).

On October 3, 2003, the district court denied Muth's petition. *Muth v. Wisconsin*, No. 01-C-0398 (E.D. Wis. Oct. 3, 2003) [hereinafter *Muth II*]. The court, applying the standard of review provisions set forth in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(1) ("AEDPA"), held that *Lawrence* was not "clearly established" Supreme Court precedent at the time of the Wisconsin Court of Appeals' decision on direct appeal. As such, the district court held that it could not grant habeas relief even if the Court of Appeals' decision was contrary to *Lawrence*. *Muth II*, at 5. The district court subsequently denied Muth a certificate of appealability. This court, however, granted a certificate to determine if *Lawrence* should apply retroactively. This appeal followed.

## II.

Because of the limited power of a federal court to issue a writ of habeas corpus in a matter involving a state prisoner, a central focus of this case is whether and to what extent this court should even consider the Supreme Court's decision in *Lawrence*. AEDPA instructs a federal court reviewing a state conviction on habeas review to determine whether the decision of the last state court to adjudicate the merits of the petitioner's claim was reasonably correct *as of the time the decision was made*. As discussed below, only in limited circumstances are legal developments occurring after the state court's decision considered.

*Lawrence* was decided after Muth's conviction and the exhaustion of his state post-conviction remedies. Muth has not identified, and we have not found, a federal court decision (and certainly not a Supreme Court decision) prior to the Wisconsin Court of Appeals decision in *Muth I* that even discussed whether criminal penalties for incest might be

unconstitutional. The closest decision having some bearing and still valid in 2001 was the Supreme Court's decision in *Bowers v. Hardwick*, 478 U.S. 186 (1986), *overruled by Lawrence*, 539 U.S. at 578. In that case, the Court held that a Georgia law banning sodomy was not unconstitutional even when applied to consenting adults. Although *Bowers* did not deal with incest, it can be safely assumed that a court unwilling to find a law banning sodomy unconstitutional would be no more inclined to find a law prohibiting incest unconstitutional.

Because *Lawrence* overruled *Bowers*, and because there is no other related precedent, Muth understandably invokes *Lawrence* as his only hope for success. The district court held, however, that *Lawrence* could not be considered because it was not clearly established in 2001 when the Wisconsin Court of Appeals issued its decision in *Muth I*. At this point we need first to review the district court's decision that *Muth I* was an adjudication on the merits and if so, whether AEDPA standards of review applied to Muth's claim (Part A). Next, we consider the question raised *sua sponte* by this court in its order granting Muth the certificate of appealability: whether *Lawrence* is retroactively applicable (Part B).

## A.  Whether *Muth I* was an adjudication on the merits.

Under AEDPA, a federal court may issue a writ of habeas corpus in cases involving prisoners convicted by a state only where the applicable state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unrea-
sonable determination of the facts in light of the evi-
dence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). This case is concerned only with
subsection (d)(1).

"[A] state court decision is 'contrary to' federal law if
the state court either incorrectly laid out governing Supreme
Court precedent, or, having identified the correct rule of
law, decided a case differently than a materially factually
indistinguishable Supreme Court case." *Conner v. McBride*,
375 F.3d 643, 649 (7th Cir. 2004), *cert. denied*, ___ U.S. ___,
125 S.Ct. 1399 (2005). "An 'unreasonable application' of
Supreme Court precedent occurs when 'the state court
identifies the correct governing legal rule . . . but unreason-
ably applies it to the facts of the particular state prisoner's
case' or 'if the state court either unreasonably extends a
legal principle from [the Court's] precedent to a new context
where it should not apply or unreasonably refuses to extend
that principle to a new context where it should apply.' "
*Dixon v. Snyder*, 266 F.3d 693, 700 (7th Cir. 2001) (quoting
*Williams v. Taylor*, 529 U.S. 362, 405 (2000)). "Clearly estab-
lished" Supreme Court precedent is "the holdings, as
opposed to the dicta, of the [Supreme] Court's decisions as
of the time of the relevant state-court decision." *Lockyer v.
Andrade*, 538 U.S. 63, 71 (2003).

The district court held that because *Lawrence* had not been
decided at the time the Wisconsin Court of Appeals denied
Muth's appeal, it obviously could not be clearly established
Supreme Court precedent. Importantly, however, before
applying the "clearly established" standard of review, the
reviewing court must first determine whether the claim
"was *adjudicated on the merits* in State court proceedings." 28
U.S.C. § 2254(d) (emphasis added). In other words, § 2254's

standards apply only when a state court has decided the merits of the issue raised by the petitioner. If the state court did not reach the merits, § 2254 does not apply and this court applies the general habeas standard set forth at 28 U.S.C. § 2243. *Braun v. Powell*, 227 F.3d 908, 916-17 (7th Cir. 2000).

The question then is whether the Wisconsin Court of Appeals reached the merits of Muth's constitutional claim. If it did, a writ will issue only if pre-*Lawrence* precedents of the Supreme Court (leaving aside for the moment whether *Lawrence* is retroactive and whether it even applies) clearly established that criminalizing incestuous conduct between two consenting adults was unconstitutional. As we indicated above, Muth has no hope for a writ if *Lawrence* cannot be considered. If, however, the Court of Appeals did not reach the merits, AEDPA does not apply and this court may consider *Lawrence* in determining whether to issue a writ.

Muth argues that the Wisconsin Court of Appeals did not reach the merits of his constitutional claim. As noted above, in *Muth I* the Court of Appeals stated that it agreed with the decision of the trial court that Muth did not have a privacy right to have sexual intercourse with his sister. It also decided, however, that it did not have to reach the conclusion reached by the trial court because it had already decided that the state could prohibit incestuous relationships in an earlier case—*State v. Allen M. Muth I*, slip op. at 2 ("Because we have already concluded that the State has a compelling interest in prohibiting incest, we reject Muth's challenges to the constitutionality of the incest statute."). Muth argues that the Court of Appeals did not adjudicate the merits of his claim because the court in *Allen M.* did not consider the criminal statute at issue here. Instead, *Allen M.* considered Wisconsin's statute that permits the termination of parental rights where the children are the product of an

incestuous relationship. *Allen M.*, 571 N.W.2d at 876. Muth thus argues that the Court of Appeals misread or mis-applied its earlier decision in *Allen M.* According to Muth, *Allen M.* dealt with a different statute and did not stand for the proposition the court in *Muth I* suggested it did. Because the Court of Appeals relied solely on *Allen M.* to decide *Muth I*, and *Allen M.* did not resolve the claim under Wis. Stat. § 944.06 at issue in *Muth I*, according to Muth, *Muth I* was not an adjudication on the merits.

We disagree. Even assuming the Wisconsin Court of Appeals misread or misapplied *Allen M.*, the decision in *Muth I* was an adjudication on the merits of Muth's claim that Wisconsin's criminal prohibition of incest was un-constitutional insofar as it applied to the private conduct of two consenting adults. AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court.[5] In fact, several circuits

---

[5] If a state court specifically identifies a claim it must identify and review the correct claim. In *Appel v. Horn*, 250 F.3d 203, 210-11 (3d Cir. 2001), the Third Circuit found that the AEDPA standards of review did not apply where "petitioner had properly pre-sented in the state courts a claim of *the constructive denial of counsel* but that the state courts had misconstrued the claim as one of *the ineffective assistance of counsel.*" *Chadwick v. Janecka*, 312 F.3d 597, 605 (3d Cir. 2003) (describing *Appel*) (emphasis in the original). It stands to reason that a petition is subject to AEDPA's standards of review only when a petitioner has had *his* claim reviewed by a state court. If a court considers another claim, it has not considered *his* claim. In this case, however, Muth does not suggest that the Wisconsin Court of Appeals did not correctly identify his claim. The Wisconsin Court correctly identified Muth's claim on the first page of its opinion: "The issue

(continued...)

have held that a state court need not offer *any* reasons and summarily dispose of a petitioner's claim and that summary disposition would be an adjudication on the merits. *Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir.), *cert. denied*, 538 U.S. 1000 (2003); *Wright v. Dep't of Corr.*, 278 F.3d 1245, 1254-55 (11th Cir. 2002), *cert. denied*, 538 U.S. 906 (2003); *Sellan v. Kuhlman*, 261 F.3d 303, 310-12 (2d Cir. 2001); *Bell v. Jarvis*, 236 F.3d 149, 158-62 (4th Cir. 2000) (en banc); *Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th Cir. 2000); *Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999); *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999); *Delgado v. Lewis*, 181 F.3d 1087, 1091-92 n.3 (9th Cir. 1999), *vacated on other grounds by*, 528 U.S. 1133 (2000); *see also Weeks v. Angelone*, 528 U.S. 225, 237 (2000).[6]

An adjudication on the merits is perhaps best understood by stating what it is not: it is not the resolution of a claim on procedural grounds. *See Sellan*, 261 F.3d at 311 (" 'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."); *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002) ("adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive as opposed to

----

[5] (...continued)
on appeal is whether Wisconsin's incest statute, Wis. Stat. § 944.06 (1997-98) is constitutional." *Muth I*, slip op. at 1.

[6] In *Weeks*, the Supreme Court considered, under the deference rules set forth in AEDPA, a claim rejected without explanation by the Virginia Supreme Court. *Weeks*, 528 U.S. at 237. Thus, the Supreme Court implicitly treated a summary disposition by a state court as an adjudication on the merits.

procedural"), *cert. denied*, 537 U.S. 1104 (2003). It is only after a federal court has determined that a state court has adjudicated a claim on the merits that the correctness of the state court's decision is considered.[7] Only then can a federal court consider a court's reasoning (assuming it has provided one, see above). The district court in this case put it quite succinctly:

> Nevertheless, the fact that the court of appeals may have misread or misapplied its own precedent does not mean that it did not adjudicate the merits of Muth's constitutional challenge as required by § 2254(d). As noted, the court of appeals framed the issue as whether the incest statute was constitutional and went on to hold that it was. The court's poor reasoning may provide a basis for finding that its decision was "contrary to" or involved an "unreasonable application" of clearly established federal law, but it is not grounds for finding that the court failed to adjudicate the claim on the merits.

*Muth II*, slip op. at 7.

Viewed thus, it is clear the Wisconsin Court of Appeals adjudicated Muth's appeal on the merits. Because it did, our review is limited to determining whether the decision reached by *Muth I* was contrary to "clearly established Federal law" at the time that *Muth I* was decided. Unless *Lawrence* is retroactive, that is unless it applies to cases that became final prior to June 26, 2003 (the date *Lawrence* was

---

[7] Under AEDPA, a state court decision need not even be correct in the view of the reviewing federal court. The decision need only not be "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

decided), it should not even be considered in resolving Muth's claim. We thus turn next to the retroactivity question.

## B.  Whether *Lawrence* should be retroactively applied to Muth.

As noted above, this court, in its order granting Muth a certificate of appealability, raised *sua sponte* the following issue: whether the *Lawrence* decision should be retroactively applied to Muth. In considering this issue, the parties focused primarily on the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989). In *Teague*, a plurality of justices held that a petitioner for a writ of habeas corpus would not have the benefit of new constitutional rules of criminal procedure announced by the Supreme Court after the petitioner's conviction had become final. *Teague*, 489 U.S at 310 (O'Connor, J., plurality opinion).[8] There are two "exceptions" to this doctrine of non-retroactivity: 1) the rule "places a class of private conduct beyond the power of the State to proscribe," *id.* at 311 (quoting *Mackey v. United States*, 401 U.S. 667, 692 (1971) (Harlan, J., concurring in part and dissenting in part)), or; 2) the rule is a "watershed rule" that implicates the fundamental fairness and accuracy of the criminal proceeding, *id.*

Muth argues that the first exception applies here, that is, *Lawrence* announced a new rule that placed his private conduct (an act of incest with a consenting adult) beyond

---

[8]  A majority of the Court's justices have since ratified the plurality decision in *Teague*. *See, e.g., Gray v. Netherland*, 518 U.S. 152 (1996); *see also* 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure*, 1025 n.3 (4th ed. 2001) (collecting cases).

Wisconsin's power to criminalize. But *Teague* is not strictly applicable to this case. *Teague* is concerned with the retro-activity of new constitutional rules of criminal *procedure*. *Bousley v. United States*, 523 U.S. 614, 620 (1998) ("*Teague* by its own terms applies only to procedural rules . . . ."). Confusion on this point is not surprising. *See Schriro v. Summerlin*, ___U.S. ___, 124 S.Ct. 2519, 2522 n.4 (2004) ("We have sometimes referred to rules of this latter type as falling under an exception to *Teague*'s bar on retroactive application of procedural rules; they are more accurately characterized as substantive rules not subject to the bar.") (internal citation omitted); *see also Beard v. Banks*, ___U.S. ___, 124 S.Ct. 2504, 2510 n.3 (2004).

*Lawrence* did not announce, and Muth does not seek to have this court find retroactive, a new *procedural* rule. *Lawrence* held that a state cannot enact laws that criminalize homosexual sodomy. *Lawrence* is a new substantive rule and is thus retroactive. *Anderson v. Morrow*, 371 F.3d 1027, 1033 (9th Cir. 2004). Accordingly, an adult imprisoned for violating a state's sodomy law (provided that person's conduct took place with another consenting adult) would be eligible for a writ of habeas corpus. If it would be unconsti-tutional to punish a person for an act that cannot be subject to criminal penalties it is no less unconstitutional to keep a person in prison for committing the same act. *See Mackey*, 401 U.S. at 693 (Harlan, J., concurring in part and dissenting in part) ("There is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.").

Muth, however, is not in prison for homosexual sodomy. The ultimate question then is not whether *Lawrence* is retro-active, but, rather, whether Muth is a beneficiary of the rule *Lawrence* announced. He is not. *Lawrence* did not address the constitutionality of incest statutes. Rather, the statute at

issue in *Lawrence* was one proscribing homosexual sodomy and the Court, as noted above, viewed its decision as a reconsideration of *Bowers*, another case involving homosexual sodomy. *Lawrence*, 539 U.S. at 564 ("[W]e deem it necessary to reconsider the Court's holding in *Bowers*."). There is no mention of incest in the Court's opinion.

*Lawrence* also did not announce, as Muth claims it did, a fundamental right, protected by the Constitution, for adults to engage in all manner of consensual sexual conduct, specifically in this case, incest. The Court certainly had not announced such a right prior to *Lawrence*, *see Carey v. Population Servs. Int'l*, 431 U.S. 678, 688 n.5 & n.17 (1977) ("[T]he Court has not definitively answered the difficult question whether and to what extent the Constitution prohibits statutes regulating private consensual sexual behavior among adults, and we do not purport to answer that question now.") (internal citation and punctuation omitted), and *Lawrence*, whatever its ramifications, does not, in and of itself, go so far.

This is clear from the Court's analysis in *Lawrence*. In *Lawrence* in holding the state sodomy statute unconstitutional, the Court did not apply the specific method it had previously created for determining whether a substantive due process claim implicated a fundamental right:

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest.

*Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal citations omitted). This method, referred to by the Court as "established," *id.* at 720, is absent from *Lawrence. See Lawrence*, 539 U.S. at 586 (Scalia, J., dissenting) ("[N]owhere does the Court's opinion declare that homosexual sodomy is a 'fundamental right' under the Due Process Clause. . .").

This omission led the Eleventh Circuit to conclude that *Lawrence* did not announce a "fundamental right to private sexual intimacy":

> [T]he *Lawrence* opinion contains virtually no inquiry into the question of whether the petitioners' asserted right is one of "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." [T]he opinion [also] notably never provides the " 'careful description' of the asserted fundamental liberty interest" that is to accompany fundamental-rights analysis.

*Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 816 (11th Cir. 2004), *cert. denied*, 125 S. Ct. 869 (2005).

The Supreme Court in *Lawrence* also did not apply strict scrutiny in reviewing the sodomy statute at issue. *See Lawrence*, 539 U.S. at 586 (Scalia, J., dissenting) (stating that "[the majority does not] subject the Texas law to the standard of review that would be appropriate (strict scrutiny) if homosexual sodomy were a 'fundamental right' " and concluding that the majority "proceeded to apply an unheard-of form of rational-basis review"); *Lofton*, 358 F.3d 817 ("Most significant, however, is the fact that the *Lawrence* Court never applied strict scrutiny, the proper standard when fundamental rights are implicated, but instead inval-

idated the Texas statute on rational-basis grounds, holding that it 'furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual.' ") (quoting *Lawrence*, 539 U.S. at 578). Strict scrutiny is the standard applicable to challenges where a fundamental liberty interest is at issue. The Court's refusal to apply that standard confirms that the Court was not creating a new fundamental right. *See Lofton*, 358 F.3d at 817.

Given, therefore, the specific focus in *Lawrence* on homosexual sodomy, the absence from the Court's opinion of its own "established method" for resolving a claim that a particular practice implicates a fundamental liberty interest, and the absence of strict scrutiny review, we conclude that *Lawrence* did not announce a fundamental right of adults to engage in all forms of private consensual sexual conduct.

It may well be that future litigants will insist that *Lawrence* has broader implications for challenges to other state laws criminalizing consensual sexual conduct. However, because this case is here on habeas review, the only question before this court is whether *Lawrence* announced a new rule proscribing laws prohibiting the conduct for which Muth was convicted. We have concluded that it does not. Applying this standard to the case at hand, there was no clearly established federal law in 2001 that supports Allen Muth's claim that he has a fundamental right to engage in incest free from government proscription.

### III.

Allen Muth is not entitled to a writ of habeas corpus. There was no clearly established federal law in 2001 that would have made his conviction for incest unconstitutional. The decision of the district court is

AFFIRMED.

EVANS, *Circuit Judge*, concurring in the judgment. I concur in the judgment, but not the opinion, of the court. Muth can only prevail (1) if he can rely on *Lawrence v. Texas* and (2) if *Lawrence v. Texas* can be read to decriminalize incest. He can't satisfy either "if," but even if he could slip past the first one, he could never get by the second.

*Lawrence v. Texas* established an important principle: States cannot demean the existence of homosexuals or control their destiny by making their private sexual conduct a crime. Certain varieties of sexual conduct clearly remain outside the reach of *Lawrence*, things like prostitution, public sex, nonconsensual sex, sex involving children, and certainly incest, a condition universally subject to criminal prohibitions. To argue that *Lawrence v. Texas* renders laws prohibiting sex between a brother and a sister unconstitutional demeans the importance of its holding which deals a fatal blow to criminal laws aimed at punishing homosexuals.

As I read the majority opinion, I sense a certain degree of unease, even disdain, for the majority opinion in *Lawrence*. The citations to Justice Scalia's dissent in *Lawrence*, I submit, are unnecessary. I also don't care for the repetitive (seven mentions in Part B) paraphrasings of the Texas law (which prohibited "engaging in consensual sexual activity with a person of the same sex") as a law prohibiting "homosexual sodomy." I realize that term is used twice in the majority opinion in *Lawrence*, but I think its use is ill-advised and outdated as well. As I see it, the term "homosexual sodomy" is pejorative. It should be scrubbed from court decisions in the future. For these reasons, I join the judgment of the court without embracing certain aspects of the majority opinion.

A true Copy:
     Teste:

                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*