# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1833

_____

| | | |
|---|---|---|
| Kenneth Shelton, Jr., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| James D. Purkett, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: December 9, 2008
Filed: April 28, 2009

_____

Before LOKEN, Chief Judge, BEAM and ARNOLD, Circuit Judges.

_____

BEAM, Circuit Judge.

Kenneth Shelton appeals the district court's[1] denial of his 28 U.S.C. § 2254 petition for habeas corpus relief. Two Sixth Amendment issues–the denial of counsel at a critical stage and the ineffective assistance of counsel–have been certified for appeal. We affirm the district court.

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, adopting the Report and Recommendation of the Honorable Audrey G. Fleissig, United States Magistrate Judge for the Eastern District of Missouri.

## I.    BACKGROUND

In December 1998, Shelton and two others forcibly entered a private home and robbed the residents at gunpoint.  The primary witness at trial was Marcus Hughes, one of the robbery participants, who testified in exchange for a reduced sentence. Hughes also provided a written statement to police which mentioned that Shelton stayed out of sight during the robbery because the residents would have recognized him from a prior drug sale.

Shelton was charged with first-degree robbery, burglary and two counts of armed criminal action in Missouri state court.  Prior to trial, the trial judge granted a motion in limine to exclude any references to Shelton's prior drug purchases. However, at the close of the evidence, the state offered, without objection, Exhibit 8, which was a copy of Hughes' statement that made reference to Shelton's drug involvement.  During deliberations, the jury asked to view the exhibit, and the court granted this request without informing counsel that it had received a communication from the jury.  After the jury returned a guilty verdict, counsel unsuccessfully moved for a mistrial and a new trial based on the exhibit.

On direct appeal, Shelton challenged the exhibit's publication to the jury on the basis that the exhibit made reference to an inadmissible prior act and also on the basis that the publication violated his Sixth Amendment right to have counsel present at all stages of the proceeding–a ground he did not raise with the trial court in the motion for new trial.  The Missouri Court of Appeals affirmed his conviction.  State v. Shelton, 66 S.W.3d 125 (Mo. Ct. App. 2001) (per curiam).  The court relied upon Missouri evidentiary law and found that once an exhibit has been admitted without objection, it is not improper to publish the exhibit to the jury.  The state court also reviewed the Sixth Amendment claim for plain error and found none because the exhibit's reference to drugs was brief and inadvertent.  Although Shelton asked for rehearing before the Missouri Supreme Court, he did not file a required motion to

transfer the case to that court, nor did he file a petition for certiorari to the United States Supreme Court. The state court denied his motion for rehearing on January 24, 2002. Shelton unsuccessfully sought state post-conviction relief between May 20, 2002, and March 26, 2004, when the post-conviction mandate issued.

Shelton filed the current petition for habeas corpus on March 1, 2005, as relevant to this appeal, alleging that he was denied counsel at a crucial stage of trial when the trial court sent the exhibit to the jury without notifying counsel, and that counsel was ineffective for failing to present the Sixth Amendment claim in the motion for new trial. The district court denied relief on the merits, finding that although Shelton's Sixth Amendment rights were violated when the trial court published the exhibits to the jury without notifying counsel, there was no prejudice to Shelton's rights. The district court also found that counsel was not ineffective because the motion for new trial on the basis of the purported Sixth Amendment violation would have been overruled by the Missouri trial court, under Missouri law.

## II. DISCUSSION

### A. Timeliness

As an initial matter, the government asserts that Shelton's March 1, 2005, petition was not timely filed. The Antiterrorism and Effective Death Penalty Act (AEDPA) provides for a one-year statute of limitations for habeas corpus petitions, 28 U.S.C. § 2244(d), which begins to run when the state court judgment became final by the conclusion of direct review, or when the time for seeking such review expires, whichever is later. Id. § 2244(d)(1)(A). "Direct review" in § 2244(d) encompasses review of a state court conviction by the United States Supreme Court. Clay v. United States, 537 U.S. 522, 528 n.3 (2003). Applying that standard to determine whether Shelton's petition is timely is complicated, however, by the fact that he did not file a

motion to transfer to the Missouri Supreme Court following the Missouri Court of Appeals' adjudication of his direct appeal.

The government did *not* object to the magistrate judge's conclusion that Shelton's habeas corpus petition was timely filed, likely because at the time the district court issued its order, the petition was considered timely under the law of our circuit. See Nichols v. Bowersox, 172 F.3d 1068, 1072 (8th Cir. 1999) (en banc) (holding that a judgment is final, for AEDPA statute of limitations purposes, at the conclusion of all direct criminal appeals in the state system followed by the expiration of the ninety days for filing a petition for a writ of certiorari with the United States Supreme Court). Subsequent to the district court's denial of Shelton's habeas corpus petition, we issued the en banc decision of Riddle v. Kemna, 523 F.3d 850 (8th Cir. 2008) (en banc), which overruled Nichols. In Riddle, we held that when no application is made to transfer a Missouri case to the Missouri Supreme Court, the direct appeal becomes final when the mandate issues, rather than after the ninety-day period for seeking certiorari with the Supreme Court ends. Id. at 855-56. We reasoned that, because no petition for transfer was filed, Riddle could not seek review in the state court of last resort, which also precluded review by the United States Supreme Court. Id. The Riddle court also noted that with regard to an equitable tolling argument, a change in circuit precedent would constitute an "extraordinary circumstance" that may serve to equitably toll AEDPA's statute of limitations, if a petitioner had otherwise been diligently pursuing his rights. Id. at 857.

Under the prior rule, Shelton's petition was considered timely. Under Nichols, his AEDPA one-year statute of limitations clock did not begin to run until April 24, 2002, ninety days after the last entry of judgment on the direct appeal was issued. The clock stopped twenty-five days later on May 20, 2002, when Shelton filed his application for post-conviction relief. See 28 U.S.C. § 2244(d)(2). The one-year clock began to run again on March 26, 2004, when the post-conviction mandate was issued. At this point, Shelton had 340 days, or until March 1, 2005, (the petition date),

to timely file. Because Shelton's petition was just barely timely under <u>Nichols</u>, it is clear that under the <u>Riddle</u>[2] rule, which does not give him the benefit of the certiorari-seeking ninety-days, Shelton's petition was untimely. Further, the effect of <u>Riddle</u>'s change in circuit precedent, as noted above, is an extraordinary circumstance that would allow equitable tolling, if Shelton has otherwise been diligently pursuing his rights. The issue of whether Shelton has been diligently pursuing his rights is a factual issue about which the record is not yet developed, which would normally require remand to the district court. <u>Streu v. Dormire</u>, 557 F.3d 960, 968 (8th Cir. 2009). Nonetheless, instead of remanding for further development of the non-jurisdictional statute of limitations defense, we proceed directly to the merits of Shelton's habeas corpus petition. <u>Trussell v. Bowersox</u>, 447 F.3d 588, 590 (8th Cir. 2006) (holding that even though habeas corpus petition's timeliness was in doubt, we would proceed to the merits of the petition in the interest of judicial economy because the statute of limitations defense was not a jurisdictional bar to our review).

## B. Sixth Amendment Violation

In his petition for habeas corpus, Shelton alleges that the state trial court violated the Sixth Amendment by granting the deliberating jury's request to view exhibits, specifically Exhibit 8, without informing counsel that the court was communicating with the jury. We note at the outset that the government seems to concede this was constitutional error, but argues that under our standard of review it is one we cannot correct. In <u>Stewart v. Nix</u>, 972 F.2d 967 (8th Cir. 1992), we recognized that communications between the judge and jury, absent counsel, violate the Sixth Amendment and are presumptively prejudicial, but that presumption can be

---

[2]However, under <u>Riddle</u>, Shelton's clock would not have started running until February 20, 2002, when the direct appeal mandate issued, rather than January 24, 2002, when the last judgment was entered. 523 F.3d at 856. Nonetheless, the benefit of these extra twenty-eight days would not have rendered Shelton's petition timely under <u>Riddle</u>.

overcome by a lack of prejudice. Id. at 971; see also, e.g., United States v. Koskela, 86 F.3d 122, 125 (8th Cir. 1996). Stewart involved the jury asking the trial judge to clarify a point of law, 972 F.2d at 969, and Koskela involved the trial court giving the jury an uncounseled instruction, 86 F.3d at 124-25. Here, the jury asked the court to view the exhibits which had been admitted into evidence during trial. We question whether the act of handing over a previously admitted exhibit to the jury qualifies as the sort of presumptively prejudicial "communication" Stewart addressed, as it seems more ministerial than substantive. In the absence of vigorous argument by the government and because we believe the ultimate outcome is not affected by our doing so, we also assume that this was constitutional error.

Because the Missouri courts conducted plain error review of the Sixth Amendment claim, Shelton may arguably have procedurally defaulted this claim. Unfortunately, there exists an oft-noted, yet surprisingly persistent, split of authority in our circuit about whether plain error review "cures" the procedural default. Compare Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996) (holding that plain error review does not cure the default), with Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000) (holding that when the state conducts plain error review, the habeas court may review for "manifest injustice"). We need not attempt to solve this dispute today. Assuming we may review, the AEDPA mandates a deferential review of a state court decision, James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). We may not simply conduct our own plain error review de novo. Id. Thus, whatever standard of review we apply under AEPDA mandates, a view of the record makes it clear that we must affirm the district court.

As the Missouri courts noted, the reference in the exhibit to Shelton's involvement with drugs was brief and was neither highlighted nor a focal point of the exhibit. And, under Missouri state law, all of the evidence admitted was able to be viewed by the jury in the jury room because it was admitted during trial without objection. State v. Hornbuckle, 769 S.W.2d 89, 99 (Mo. 1989). Shelton asserts that

the trial judge had only the *discretion* to send the properly admitted exhibits to the jury, and counsel's presence could have had an impact during the colloquy.  Again, however, we are reviewing this claim, at most, through AEDPA's deferential lens.  See 28 U.S.C. § 2254(d).  The Missouri Court of Appeals found that the trial judge would have sent Exhibit 8 to the jury room even if counsel had been present to protest the action.  This determination was not contrary to nor an unreasonable application of Supreme Court precedent.  Shelton's argument, therefore, is without merit.

##    C.    Ineffective Assistance of Counsel

Shelton asserts that counsel was ineffective for failing to raise the Sixth Amendment grounds to the state trial court in the motion for new trial.  Although Shelton apparently raised this claim to the state post-conviction court, the post-conviction court did not squarely address this aspect of Shelton's ineffective assistance of counsel claim.  App'x at 53-58.  The government's brief summarily asserts that the claim was adjudicated on the merits and is entitled to the deferential standard of review spelled out in 28 U.S.C. § 2254(d).  We are not as convinced that the claim was adjudicated on the merits.  We are also not certain, after thoroughly reviewing the post-conviction court's order, that the claim was *not* adjudicated.  It would have been helpful to have Shelton's application for post-conviction relief included in the record on appeal, so that we could more clearly connect the dots between the claims alleged and those adjudicated on post-conviction review.[3]  The district court appears to have reviewed the claim de novo, rather than under AEDPA's deferential unreasonable-application-of-Supreme-Court-precedent standard from § 2254(d).  See Brown v. Luebbers, 371 F.3d 458, 460 (8th Cir. 2004) (en banc) (holding that the condition precedent for AEDPA deferential review is that the claim must have been adjudicated

---

[3]Shelton's application for post-conviction relief is not contained in the Appendix.  However, the government does not contend that this ground is procedurally defaulted, and both the magistrate judge and the district court refer to this claim being included, but ignored by the post-conviction court.

on the merits in state court). Though we are not certain whether the claim was adjudicated by the state court, out of an abundance of caution, we apply the de novo standard of review on appeal. Pfau v. Ault, 409 F.3d 933, 939 (8th Cir. 2005) (holding that when the issue of state court adjudication was unclear, we would give the petitioner the benefit of the doubt and review the claim de novo).

A claim of ineffective assistance of counsel is governed by the performance and prejudice standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," id. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong requires proof "that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Like the district court, we turn immediately to Strickland's prejudice prong and find that Shelton cannot establish a meritorious claim for ineffective assistance of counsel. Had counsel made the Sixth Amendment claim to the trial court in the motion for new trial, there is no reasonable probability that the outcome–the trial court's refusal to overturn the guilty verdict–would have been different. Trial counsel did, in fact, raise the exhibit issue in the motion for new trial, though not the constitutional argument, and the trial court found that the exhibit was not prejudicial to Shelton's case. There is no reasonable probability that the addition of Sixth Amendment grounds to the argument would have persuaded the trial court to change its ruling on that basis. As stated in the previous section, the exhibit was permissibly seen by the jury because it was admitted without objection at trial, and trial counsel's presence at the colloquy between the judge and jury would not have altered the fact that the trial judge was going to allow the jury to view the exhibit.

Shelton also argues that counsel's failure to raise the constitutional issue to the trial court resulted in less favorable appellate review of the issue, citing Burns v. Gammon, 260 F.3d 892, 898 (8th Cir. 2001). In Burns, trial counsel failed to make a Sixth Amendment objection to the prosecutor's closing argument that the jury should have punished the defendant for demanding a jury trial, and thereby requiring the rape victim to testify and "relive the attack." Id. at 896. We noted that counsel's failure to lodge a proper objection to this remark during closing argument was prejudicial because it occurred during rebuttal argument and the jury retired to deliberate after hearing the remark "without riposte." Id. at 897. We further opined that the petitioner was prejudiced because the failure of counsel to lodge an objection "started a chain reaction of burdensome [plain error] review by the Missouri appellate courts and this court." Id.

Shelton's citation to Burns is understandable, but we think there is a qualitative difference between counsel's error of omission in Burns and the one alleged here. In Burns, counsel failed to sufficiently object to the prosecutor's improper comment on the accused's exercise of his constitutional right to a jury trial and to confront witnesses. Here, counsel failed to raise, in a motion for new trial, a Sixth Amendment argument[4] about the right to counsel during a colloquy between the judge and jury regarding whether the jury could view trial exhibits. While we recognize that the plain error review this claim was subjected to on appeal was onerous, there is no reasonable probability that the outcome of Shelton's direct appeal or post-conviction proceedings would have been different absent counsel's error under any level of review. Accordingly, because Shelton was not prejudiced by the "plain error" review, his Burns argument is without merit.

---

[4]Again, as earlier noted, we seriously question whether a Sixth Amendment violation even occurred when counsel was not present during the exchange between the judge and jury over whether the jury could view properly admitted trial exhibits.

## III.  CONCLUSION

The judgment of the district court is affirmed.

_____