# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 03-2880/2938

_____

William Weaver,      *
    *
        Appellee/Cross-Appellant,   *
    *   Appeals from the United States
   v.                      *   District Court for the
    *   Eastern District of Missouri.
Michael Bowersox,          *
    *
        Appellant/Cross-Appellee.   *

_____

Submitted: September 13, 2004
Filed: February 16, 2006 (Corrected 2/23/06)

_____

Before BYE, BOWMAN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

The State of Missouri appeals the grant of habeas relief to William Weaver. The district court[1] concluded that the prosecutor's closing arguments during the penalty phase of Weaver's capital murder trial violated the United States Constitution. Weaver cross-appeals the denial of his claim that the prosecutor made improper closing arguments during the guilt phase of the trial. We affirm.

_____

[1] The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

In separate Missouri state court trials held in 1988, William Weaver and Daryl Shurn were convicted of the execution-style shooting death of Charles Taylor. Taylor was an acquaintance of Shurn who was going to testify against Shurn in a drug case. Shurn hired Weaver to kill Taylor, and Weaver was convicted of doing so.

During his closing argument in the penalty phase, the prosecutor made a series of statements relevant to the claims in this matter. In a claim the parties identify as Claim 2E, the prosecutor made the following statements:

> So, yeah, is there a possibility he's innocent? A possibility. I'm not going to deny that. But that's not what's required by the law and that's not what we could live by. If that's required, nobody would ever be sentenced to die. We wouldn't have a death penalty. And, quite frankly, if you don't sentence him to die in this case, there's no point in having a death penalty.

Weaver's trial counsel objected to the statements as improper and misstatements of the law. The state trial court sustained the objection and issued a curative instruction for the jury to disregard the statements.

In a claim the parties identify as Claim 2F, the prosecutor made the following statements:

> Then I'll say what I said earlier. If these facts don't justify, don't cry out for the death penalty, then which facts do? If a cold-blooded hit on behalf of drug scum isn't enough for the death penalty, then what facts justify it?

I know there's a movie, Patton, and in the movie, George Patton was talking to his troops because the next day they were going to go out in battle and they were scared as young soldiers. And he's explaining to them that I know that some of you are going to get killed and some of you are going to do some killing tomorrow morning. And they all knew that. And he was going to try to encourage them that sometimes you've got to kill and sometimes you've got to risk death because it's right. He said: But tomorrow when you reach over and put your hand in the pile of goo that a moment before was your best friend's face, you'll know what to do.

Defense counsel objected to the statements as improper on the grounds that they were intended to inflame and prejudice the jury. The state trial court overruled the objection.

Finally, in a claim the parties identify as part of Claim 2M, the prosecutor made statements that Weaver contends improperly focused the jury on society's general war on drugs, urged the jury to sentence Weaver to death merely to send a message to other drug dealers, and caused the jury to ignore its obligation to individualize its sentencing consideration by focusing on the particular facts involved in his case:

It strikes right at the heart of our system. You've got to look beyond William Weaver. This isn't personal. This is business. You people represent the entire community. You represent society. You have to give a message here. You have to tell the Williams Weavers and the Daryl Shurns of the world, and you have to be willing to look them right in the eye when you do it, that there's a point at which we won't allow you to go. And when you do, prison's too good. It's the death penalty.

Sometimes killing is not only fair and justified; it's right. Sometimes it's your duty. There are times when you have to kill in this life and it's the right thing to do. If Charles Taylor had been able to get his gun out that day, would you have said it was right for him to kill Weaver and Shurn?

Of course, you would. It would have been self-defense. Well, it was right to kill then and it's right to kill him now.

. . . .

This case – I guess it's the one that just cries out to you to say protect the community. The drug dealers, they are taking our streets away from us. Are we going to take them back? Are we going to let them have the streets or are we going to fight back? If the drug peddlers are going to run our community, then all is lost. Then there's no point in having jurors. The death penalty applies in some cases. It applies in this case.

When it comes time after [defense counsel] talks to you, I'll talk to you again briefly, and then you've got to go to the jury room and you've just got to toughen up and do what's right, even though it's going to be tough. You've got to say this is bigger than William Weaver. It's not personal; it's business.

. . . .

And I'm going to beg you for the entire community and for society not to spare his life. I'm going to beg you for the right message instead of the wrong message. The right message is life? For an execution? That's the right message? That's the message you want to send to the drug dealers, the dope peddlers and the hit men they hire to do their dirty deeds: Life in prison is what you get when we catch you and convict you. Life in prison? That's the message you want to send to the scum of the world? That when we catch you and we're convinced you're guilty, we're going to give you life in prison? That's not the right message.

. . . .

The message has to be death for these types of people. That's the only message they are going to understand.

The one thing you've got to get into your head, this is far more important than William Weaver. This case goes far beyond William Weaver. This

touches all the dope peddlers and the murderers in the world.  That's the message you have to send.  It doesn't just pertain to William Weaver.  It pertains to all of us, the community.   They are our streets, our neighborhoods, our family.  The message is death, not life.  And you've just got to geer [sic] yourself to that.

. . . .

You've got to think beyond William Weaver.  As I told you earlier, this is our worst nightmare.  This is society's worst nightmare.  If they could kill witnesses and we don't execute them in exchange, then there's no deterrence.  Then the whole system fails and then chaos reigns and our streets are never safe. The dope peddlers reign and people like William Weaver do.

. . . .

It's bigger than William Weaver.  And you've got to have the guts to do it.  I'm the Prosecuting Attorney in this county, the top law enforcement officer in the county.  I decide in which cases we ask for the death penalty and in which cases we don't.

Weaver's counsel objected to the last statement regarding the prosecutor being the top law enforcement officer in the county who chooses the cases in which to pursue the death penalty.  The trial court sustained the objection to that statement, and instructed the jury to disregard it.

The jury sentenced Weaver to death for his role in the offense.

After exhausting his state post-conviction remedies, Weaver filed a petition in federal district court under 28 U.S.C. § 2254, which, after amendment by counsel, raised twenty-two separate claims for relief.  The district court granted relief on the first of those claims that Weaver's Fourteenth Amendment rights were violated when the prosecutor exercised two peremptory strikes against black venirepersons during

-5-

jury selection.  The State of Missouri appealed.  This court reversed and remanded with instructions to address the remaining twenty-one issues raised in Weaver's petition.  Weaver v. Bowersox, 241 F.3d 1024, 1032 (8th Cir. 2001).

On remand, the district court again granted relief, this time on three claims related to improper closing arguments the prosecutor made during the penalty phase of Weaver's trial.  The district court vacated the death sentence, and ordered that Weaver either be sentenced to life in prison without the possibility of parole or be given a new penalty-phase trial.  The district court denied relief on all other claims, but granted a certificate of appealability on two claims related to closing arguments the prosecutor made during the guilt phase of Weaver's trial.

II.

We first briefly address the cross-appeal.   In claims the parties identify as 2B and 2C, Weaver contends the prosecutor made six statements during the guilt-phase closing argument and rebuttal which improperly referred to the prosecutor's personal beliefs or threatened the jury.  A discussion of the actual statements is not necessary because the district court determined the claims had been procedurally defaulted.  As a consequence, Weaver has to show "cause and prejudice" or a "fundamental miscarriage of justice" to have the claims reviewed.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("[F]ederal habeas review of [a procedurally defaulted claim] is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice.").

The district court determined Weaver failed to show cause and prejudice or demonstrate a fundamental miscarriage of justice arising from the failure to consider the claims.   In an abundance of caution, the district court addressed the merits of the claims and determined the statements did not "so infect[] the trial with unfairness as

to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).

On appeal, Weaver does not address the procedural default issue. He does not argue there was cause and prejudice or that a fundamental miscarriage of justice occurred. By failing to address the procedural default issue, he has abandoned his cross-appeal. <u>See, e.g.</u>, <u>Etheridge v. United States</u>, 241 F.3d 619, 622 (8th Cir. 2001) ("Claims not argued in the briefs are deemed abandoned on appeal."). We therefore decline to review the merits of Weaver's cross-appeal.

III.

We next turn to the issue of whether Weaver's claims are subject to the strictures placed on our review by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Weaver argues the Missouri Supreme Court did not address the "war on drugs" claims set out in Claim 2M. Our review of the Missouri Supreme Court decision leads to the conclusion that although the war on drugs claims were not specifically discussed, the Missouri Supreme Court did address the claims in a conclusory fashion that is suffcent to bring the case under AEDPA.

The Missouri Supreme Court addressed the appellant's claims about the prosecutor's emphasis on his position as the elected prosecutor in Section IV.A. of the opinion and a claim the prosecutor accused defense counsel of suborning perjury in closing argument in Section IV.B. Those claims were discussed in considerable detail by the Missouri Supreme Court. The Supreme Court then went on to discuss the arguments raised in Weaver's "Other Argument Section" of his state post-conviction application in section IV.C., under the heading: "Other Improper Arguments." The Court stated in that section:

Lastly, Weaver puts forth a collection of allegedly improper arguments made by the state during the punishment phase, including the complaint that the prosecutor argued matters outside the evidence that lacked evidentiary support. The prosecutor argued that had Weaver not run out of bullets he would have shot the arresting officer. He argued that if a prosecution witness had been out jogging a short while after the crime Weaver would have also shot that witness. Finally, he argued that the death penalty would be a deterrent. Our review of the penalty phase arguments discloses that these arguments are reasonable. The fact that the crime had been planned for the purpose of killing a witness and for the purpose of advancing what was apparently a very violent drug enterprise, permits an inference that the defendant had a high propensity for violent conduct in the future. The claim that the trial court abused its discretion in permitting the argument is without merit. The point is denied.

Weaver, 912 S.W.2d 499, 514 (Mo. 1995).

Our court's en banc decision in Brown v. Luebbers, 371 F.3d 458, 462 (8th Cir. 2004) held that "the 'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." The opinion goes on to cite to James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). In James, our court stated that "[t]he summary nature of the Missouri Court of Appeals opinion does not affect [our decision to apply the AEDPA] standard." Id. at 869.

The Seventh Circuit ruled in Muth v. Frank, 412 F.3d 808, 815 (7th Cir. 2005) that:

AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. In fact, several circuits have held that a state court need not offer *any* reasons and summarily dispose of a petitioner's claim and that summary disposition would be an adjudication on the merits. (emphasis in original)

-8-

The Missouri Supreme Court's summary disposition of Section IV.C. claims is an adjudication on the merits. We understand the concurrence's argument that the Missouri Supreme Court discussed, in a cursory fashion, some of the specific claims set out in Section IV.C., but did not specifically address the war on drugs claim. However, a decision by a state supreme court that disposes of a claim, even in a conclusory fashion, is sufficient. In this case, the Missouri Supreme Court recognized a number of claims relating to allegedly improper closing arguments and summarily denied those claims. The discussion in Section IV.C., of the Missouri Supreme Court decision, read in context with the discussions in Sections IV.A. and IV.B. is sufficient under our court's interpretation of AEDPA.

IV.

Under AEDPA, a court should only grant relief if "a decision [is] contrary to, or involves an unreasonable application of, clearly established Federal law" or "a decision [is] based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The State argues that the United States Supreme Court has not addressed improper penalty-phase closing arguments by a prosecutor. However, we have previously found that argument unpersuasive. Copeland v. Washington, 232 F.3d 969, 974 (8th Cir. 2000) (noting that "it is apparent that there are Supreme Court decisions on penalty phase closing arguments" and "[t]here are also Supreme Court decisions on guilt phase closing arguments that are relevant").

A prosecutor's argument violates due process if it "infect[s] the trial with unfairness." Darden, 477 U.S. at 181. To determine if a prosecutor's statement infected Weaver's trial with unfairness, the court must:

(1) Measure the type of prejudice that arose from the argument; (2) examine what defense counsel did in his [or her] argument to minimize prejudice; (3) review jury instructions to see if the jury was properly instructed; and (4) determine if there is a reasonable probability that the outcome of the sentencing phase would have been different, taking into account all the aggravating and mitigating circumstances.

Antwine v. Delo, 54 F.3d 1357, 1363 (8th Cir. 1995) (citing  Newlon v. Armontrout, 885 F.2d 1328, 1337 n.10 (8th Cir. 1989)).  The court should only grant habeas corpus relief it the state's "closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial." James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).  Without applying AEDPA, we vacated two sentences, including that of Shurn, the man who hired Weaver to kill Taylor, when the prosecutor in Weaver's trial made similar improper arguments in the penalty phase. Newlon, 885 F.2d at 1329; Shurn v. Delo, 177 F.3d 662 (8th Cir. 1999).

The prosecutor in this case made various penalty phase statements listed in detail in Section I.  These statements can be categorized into several types: (1) an analogy that the role of a juror is like that of a soldier who must do his or her duty and have the courage to kill; (2) statements by the prosecutor about his personal belief in the death penalty; (3) statements that executing Weaver was necessary to sustain a societal effort as part of the "war on drugs"; (4) assertions that the prosecutor had a special position of authority and decided whether to seek the death penalty; and (5) arguments that were designed to appeal to the emotions of the jury (culminating in a statement that the jury should "kill [Weaver] now").

Category (1) is factually unique, but contains statements similar in nature to impermissible statements made in other cases.  When a prosecutor tells a jury that they have a duty to kill and, as in this case, uses a graphic story from a movie to support that duty, the statement should be taken as "calculated to remove reason and responsibility from the sentencing process." Newlon, 885 F.2d at 1338.  Soldiers have

no choice but to kill. Soldiers follow orders when they kill. The responsibility for a particular death lies, therefore, with a commanding officer or the declaration of war itself, and not with a soldier's individual conscience. Furthermore, wartime killing is not a deliberative process, not a considered choice.

Describing jurors as soldiers with a duty eviscerates the concept of discretion afforded to a jury as required by the Eighth Amendment. See Zant v. Stephens, 462 U.S. 862, 879 (1983). Not only was the main thrust of the prosecutor's argument diametrically opposed to the requirement that capital sentencing be at the jury's discretion, it also "diminished the jury's sense of responsibility for imposing the death sentence, in violation of the Eighth Amendment under Caldwell v. Mississippi, 472 U.S. 320, 86 L.Ed.2d 231, 105 S.Ct. 2633 (1985)." Antwine, 54 F.3d at 1361.

Categories (2), (4), and (5) are improperly inflammatory under several existing United States Supreme Court precedents. Statements about the prosecutor's personal belief in the death penalty are inappropriate and contrary to a reasoned opinion by the jury. Miller v. Lockhart, 65 F.3d 676, 684-85 (8th Cir. 1995). A prosecutor should not emphasize his or her position of authority in making death penalty determinations because it may encourage the jury to defer to the prosecutor's judgment. Newlon, 885 F.2d at 1335-37. Further, arguments against a rational decision by the jury, and specifically those that implore the jury to kill the defendant immediately, are contrary to a fair proceeding. Id. at 1336-37; see also Shurn, 177 F.3d at 667-69 (Wollman, J., concurring).

Category (3) is also factually distinct, but similar to arguments that are improper under existing law. The controlling Supreme Court precedent is well-settled and longstanding: the Eighth Amendment requires capital sentencing to be an individualized decision-making process. See, e.g., Jones v. United States, 527 U.S. 373, 381 (1999) ("In order for a capital sentencing scheme to pass constitutional muster, it must perform a narrowing function with respect to the class of persons

eligible for the death penalty and must also ensure that capital sentencing decisions rest upon an individualized inquiry."); Buchanan v. Angelone, 522 U.S. 269, 274-75 (1998) (referring to "the Eighth Amendment requirement of individualized sentencing in capital cases"); Romano v. Oklahoma, 512 U.S. 1, 7 (1994) ("States must ensure that 'capital sentencing decisions rest on [an] individualized inquiry,' under which the 'character and record of the individual offender and the circumstances of the particular offense' are considered.") (quoting McCleskey v. Kemp, 481 U.S. 279, 303 (1987)); Harmelin v. Michigan, 501 U.S. 957, 995 (1991) ("We have held that a capital sentence is cruel and unusual under the Eighth Amendment if it is imposed without an individualized determination that that punishment is 'appropriate[.]'") (citing Woodson v. North Carolina, 428 U.S. 280, 305 (1976)); Zant, 462 U.S. at 879 ("What is important [from a constitutional standpoint] at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime.").

The argument that a signal must be sent from one case to affect other cases puts a improper burden on the defendant because it prevents an individual determination of the appropriateness of capital punishment. Sublett v. Dormire, 217 F.3d 598, 600-01 (8th Cir. 2000). Further, invoking a jury's general fear of crime to encourage the application of the death penalty in a particular case is unfairly inflammatory. Copeland, 232 F.3d at 972-73. Using the conscience of the community as a guiding principle for punishment puts too significant of a burden on a single defendant. United States v. Johnson, 968 F.2d 768, 770-71 (8th Cir. 1992).

There is little doubt that the prosecutor's statements are such that we would certainly grant relief without applying AEDPA. However, case law that applies the AEDPA bar makes it a closer decision. The question for us is whether the state court made an unreasonable interpretation of federal law as required by AEDPA. The finding by our court in Copeland is illustrative on this point. In Copeland, applying AEDPA, we found that the prosecutor's arguments in the penalty phase risked

creating a mob mentality by preying on the jury's fear of crime. Copeland, 232 F.3d at 975. Further, the court found that, "it was unreasonable, in light of Supreme Court precedent, to conclude that the argument did not result in a deprivation of due process." The statements in this case are more egregious and systemic than those in Copeland.

The conclusion by the Missouri Supreme Court that "the penalty phase arguments . . . [were] reasonable" is unreasonable under existing United States Supreme Court precedents. It is unclear which precedents the Missouri Supreme Court applied. Regardless, there can be no interpretation of the inflammatory remarks by the prosecutor that is reasonable under the various applicable United States Supreme Court precedents. As a result, AEDPA does not bar relief in the present matter.

V.

For the foregoing reasons, we affirm the judgment of the district court.

BYE, Circuit Judge, concurring in the result.

I agree Weaver's claims warrant habeas relief even if AEDPA's strict standard of review applies. I write separately because I do not believe AEDPA applies.

When a claim raised in state court proceedings is ignored by the state courts "we apply a pre-AEDPA standard of review." Clemons v. Luebbers, 381 F.3d 744, 756 n.8 (8th Cir. 2004) (citing Taylor v. Bowersox, 329 F.3d 963, 967-68 (8th Cir. 2003)); see also Wiggins v. Smith, 539 U.S. 510, 534 (2003) ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the Strickland analysis."); Canaan v.

-13-

McBride, 395 F.3d 376, 382 (7th Cir. 2005) ("When a state court is silent with respect to a habeas corpus petitioner's claim, that claim has not been 'adjudicated on the merits' for purposes of § 2254(d) [and] a federal court cannot apply the deferential standard provided by § 2254(d)."); Maples v. Stegall, 340 F.3d 433, 436 (6th Cir. 2003) ("Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

A careful side-by side examination of the claims Weaver made in state court and the Missouri Supreme Court's opinion addressing those claims convinces me the latter ignored what Weaver referred to then as his "War On Drugs" argument, and what the Court refers to now as categories (3) and (5) of Weaver's claim, that is, the "War On Drugs" argument as well as the statements designed to appeal to the emotions of the jury.

Before the Missouri Supreme Court, Weaver made six separate arguments in a section entitled "Other Improper Arguments." The six separate arguments were as follows: 1) the prosecutor's statement that if Weaver had not run out of bullets, he would have shot a police officer; 2) the prosecutor's statement that if Weaver had not run out of bullets, he would have shot witness Jean Hanson; 3) the prosecutor's discussion of the death penalty as a deterrent to homicide in violation of a pre-trial motion in limine;[2] 4) the prosecutor's opinion there were crimes other than first degree murder for which a sentence of life without parole would be appropriate; 5) the

---

[2]Specifically, the prosecutor argued:

The death penalty deters. I'm convinced of that. People can argue for a thousand years whether it does or not, but I'm convinced it does. It doesn't deter passion killings. It doesn't deter crazed people who kill. But it deters business killings like this.

I set forth the specifics of this argument for the purpose of showing Weaver's "deterrent" claim was distinct from his "war-on-drugs" claim in state court.

prosecutor's claim he could have presented victim impact evidence through the victim's wife, relatives, and friends; and 6) the "War On Drugs" argument, which identified and challenged the specific portions of the sentencing transcript containing the prosecutor's statements that have been referred to as Claim 2M in the proceedings before our court.

The Missouri Supreme Court's opinion discusses only the first three of the six arguments advanced by Weaver:

> Lastly, Weaver puts forth a collection of allegedly improper arguments made by the state during the punishment phase, including the complaint that the prosecutor argued matters outside the evidence that lacked evidentiary support. The prosecutor argued that [1] had Weaver not run out of bullets he would have shot the arresting officer. [2] He argued that if a prosecution witness had been out jogging a short while after the crime Weaver would have also shot that witness. [3] Finally, he argued that the death penalty would be a deterrent. Our review of the penalty phase arguments discloses that these arguments are reasonable. The fact that the crime had been planned for the purpose of killing a witness and for the purpose of advancing what was apparently a very violent drug enterprise, permits an inference that the defendant had a high propensity for violent conduct in the future. The claim that the trial court abused its discretion in permitting the argument is without merit. The point is denied.

State v. Weaver, 912 S.W.2d 499, 514 (Mo. 1995).

In determining whether a claim has been "adjudicated on the merits" for the purpose of applying AEDPA's strict standard of review under 28 U.S.C. § 2254(d), "[w]e must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court." Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004). While I acknowledge the "summary nature of a state court's decision does not affect the applicable standard of

review," Closs v. Weber, 238 F.3d 1018, 1020 (8th Cir. 2001) (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999)), I submit a distinction must be drawn between summarily disposing of a claim and wholly ignoring it.

Significantly, when I look at what the state court said in this case, it is clear the state court discusses and analyzes only three of the six arguments advanced by Weaver in his "Other Improper Arguments" section. Most notably, the state court identified the third of Weaver's six arguments as his *final* argument, and nowhere discusses or analyzes Weaver's last three arguments, including his "War On Drugs" claim. I do not know what else to glean from what the state court said other than to conclude it ignored Weaver's most compelling constitutional claim.

As the Court notes, the Eighth Amendment requires capital sentencing to be an individualized decision-making process. See ante at 12. Not once, not twice, not thrice, but *seven* times the prosecutor urged the jury to ignore the individual offender, William Weaver. Instead of focusing the jurors' attention upon Weaver's character and record, and the particular circumstances of Weaver's offense, the prosecutor instead advised the jury "[t]he one thing you've got to get into your head, this is far more important than William Weaver. This case goes far beyond William Weaver." He told the jury "drug dealers . . . are taking our streets away from us." He advised the jury to "send a message" to "all dope peddlers and murderers in the world [for the sake of] all of us, the community. They are our streets, our neighborhoods, our family." He said drug dealers were "society's worst nightmare. If they could kill witnesses and we don't execute them in exchange, then there's not deterrence. Then the whole system fails and then chaos reigns and our streets are never safe. The dope peddlers reign."

These statements, as well as the other improper statements discussed by the Court, clearly violated Weaver's constitutional rights. I have no trouble concluding such to be the case when reviewing the district court's decision de novo or when

-16-

applying the more demanding standard of review under AEDPA. I therefore concur in affirming the judgment of the district court.

BOWMAN, Circuit Judge, concurring in part and dissenting in part.

I agree with Judge Melloy that all of Weaver's claims are subject to review under the AEDPA standard and concur in Part III of his opinion. But because I do not think that the Court correctly applies that standard to Weaver's claims of prosecutorial misconduct, I respectfully dissent. Under 28 U.S.C. § 2254(d)(1), as amended by AEDPA, we must accept a state court's decision on the merits of a claim later raised in federal habeas proceedings unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The Court today, purporting to apply the AEDPA standard, holds that habeas relief must be granted to Weaver on his sentence.

The Court notes that several of Weaver's claims are "factually unique" or "factually distinct," presumably when compared to habeas claims adjudicated by the Supreme Court to date. ante at 10, 11. These factual distinctions alone raise red flags. I propose that it is less likely that a state court's decision will be contrary to or an unreasonable application of clearly established federal law when there are no Supreme Court cases on all fours. Moreover, the law that the Court cites today as on point is found in opinions from this Circuit, not in opinions from the Supreme Court. "[A]s the statutory language makes clear, . . . § 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. 362, 412 (2000).

The Supreme Court cases to which the Court does refer in its opinion stand for general propositions: "[a] prosecutor's argument violates due process if it 'infect[s] the trial with unfairness,'" ante at 9 (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)); the Eighth Amendment requires that a jury not be precluded from exercising

-17-

its discretion, ante at 11 (citing Zant v. Stephens, 462 U.S. 862, 879 (1983) (noting the requirement in capital cases for an "*individualized* determination" of those defendants who should receive the ultimate penalty "on the basis of the character of the individual and the circumstances of the crime")); and there is a need for "an individualized decision-making process" so that a death sentence will pass constitutional muster, ante at 11 (citing Supreme Court cases at 11–12). None of the Supreme Court cases cited in the Court's opinion touches on the distinct claims of prosecutorial misconduct on which the writ was granted.

In these circumstances, I cannot agree that the Missouri Supreme Court's decision on the issue of the prosecutor's penalty-phase argument is contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Were it not for the AEDPA standard of review, I might agree with the result reached by the Court today. Indeed, the outcome was different—where we did not apply the AEDPA standard—in our § 2254 review of Weaver's co-defendant's death sentence on grounds of improper prosecutorial closing argument in the penalty phase. Shurn v. Delo, 177 F.3d 662, 665–67 (8th Cir.), cert. denied, 528 U.S. 1010 (1999); see also Newlon v. Armontrout, 885 F.2d 1328 (8th Cir. 1989) (affirming pre-AEDPA grant of the writ on grounds of improper prosecutorial argument), cert. denied, 497 U.S. 1038 (1990). But under AEDPA, we are not empowered to grant the writ even though we may believe that the state court got it wrong. A state-court decision is not necessarily unreasonable because the federal habeas courts deem it to be incorrect. Williams v. Taylor, 529 U.S. at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003) (expounding the "contrary to" standard). The only issue for the federal courts in this case is whether the state court's decision was contrary to or an unreasonable application of clearly established federal law. Because of the apparent inconclusive state of Supreme Court jurisprudence on the alleged constitutional

violation in this case (the Court cites no apposite Supreme Court cases), I would hold that the state court's decision was neither contrary to nor an objectively unreasonable application of federal law and would reverse the judgment of the District Court.

_____