(Slip Opinion)         Cite as: 550 U. S. ____ (2007)         1

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–313

DON ROPER, SUPERINTENDENT, POTOSI
CORRECTIONAL CENTER, PETITIONER
*v.* WILLIAM WEAVER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[May 21, 2007]

PER CURIAM.

We granted certiorari in this case, 549 U. S. ___ (2006), to decide whether the Court of Appeals had exceeded its authority under 28 U. S. C. §2254(d)(1) by setting aside a capital sentence on the ground that the prosecutor's closing statement was "unfairly inflammatory." *Weaver* v. *Bowersox*, 438 F. 3d 832, 841 (CA8 2006). Our primary concern was whether the Court of Appeals' application of the more stringent standard of review mandated by the Antiterrorism and Effective Death Penalty Act of 1996, (AEDPA), 110 Stat. 1214, was consistent with our interpretation of that statute. Cf. *Carey* v. *Musladin*, 549 U. S. ___ (2006). We are now aware of circumstances that persuade us that dismissal of the writ is the appropriate manner in which to dispose of this case.

The argument made by the prosecutor in this case was essentially the same as the argument that he made in two other cases—one of which involved respondent's codefendant. See *Shurn* v. *Delo*, 177 F. 3d 662, 666 (CA8 1999); *Newlon* v. *Armontrout*, 693 F. Supp. 799 (WD Mo. 1988),

aff'd, 885 F. 2d 1328 (CA8 1989). In each of those cases,
the defendant received a death sentence. Also in each
case, the defendant filed a petition seeking federal habeas
relief before AEDPA's effective date. Federal habeas relief
was granted in all three cases. The State does not ques-
tion the propriety of relief in the other two cases because it
was clear at the time, as it is now, that AEDPA did not
apply to either of them.

Respondent argues, for the following reasons, that
AEDPA should not govern his case either. Like the defen-
dants in *Newlon* and *Shurn*, respondent filed his federal
habeas petition before the effective date of AEDPA. In-
stead of considering respondent's claims, however, the
District Court *sua sponte* stayed the habeas proceedings,
noting that respondent had indicated his intention to file a
petition for writ of certiorari seeking this Court's review of
the state courts' denial of postconviction relief. Though
the District Court recognized that respondent was not
required to seek certiorari from this Court, it concluded
that, if "a state prisoner chooses to pursue writ of certio-
rari, he must first exhaust that remedy before filing a
federal habeas corpus petition." App. to Brief for National
Association of Criminal Defense Lawyers as *Amicus Cu-
riae* 15. Thus, the District Court put respondent to a
choice: He could forgo filing a petition for certiorari, or his
habeas petition would be dismissed.

Respondent moved for reconsideration and for the ap-
pointment of counsel. The District Court denied both
motions, reiterating its view that if respondent sought
certiorari, his federal habeas petition would be premature.
When respondent notified the District Court that a peti-
tion for certiorari had been filed, the court made good on
its promise: It dismissed respondent's habeas petition
"without prejudice" to his refiling "following exhaustion of
his state proceedings." *Id.,* at 13. Though respondent had
filed his habeas petition before AEDPA took effect, the

Per Curiam

District Court dismissed his petition after the statute was in force.

Still without an attorney, respondent requested a certificate of appealability from the District Court. The court denied the request, opining that reasonable jurists could not disagree with the dismissal of respondent's petition. *Id.,* at 5–6. Respondent also filed a notice of appeal, which the Court of Appeals construed as a request for a certificate of appealability and rejected.*

Respondent refiled his habeas petition after this Court denied review of his state postconviction proceedings. The Eighth Circuit eventually concluded that, because respondent's petition was filed after AEDPA's effective date, his claims must be evaluated under that statute's strict standard of review. See *Weaver* v. *Bowersox*, 241 F. 3d 1024, 1029 (2001).

Our recent decision in *Lawrence* v. *Florida*, 549 U. S. ___ (2007), conclusively establishes that the District Court was wrong to conclude that, if respondent chose to seek certiorari, he had to exhaust that remedy before filing a federal habeas petition. *Lawrence* clarified that "[s]tate review ends when the state courts have finally resolved an application for state postconviction relief"—even if a prisoner files a certiorari petition. *Id.,* at ___ (slip op., at 4); see also *id.,* at ___–___ (slip op., at 4–5) ("[W]e have said that state prisoners need not petition for certiorari to exhaust state remedies" (citing *Fay* v. *Noia*, 372 U. S. 391, 435–438 (1963))). Thus, respondent's habeas petition, which was fully exhausted when filed, did not become unexhausted upon his decision to seek certiorari. Because the petition was not premature, the District Court had no

───────────

*Respondent did not seek rehearing or rehearing en banc in the Court of Appeals, nor did he file a petition for writ of certiorari from the denial of the certificate of appealability. Pursuit of either would almost certainly have been futile.

cause to dismiss it.

Whether this unusual procedural history leads to the conclusion, as respondent colorably contends, that the AEDPA standard is simply inapplicable to this case, is a question we find unnecessary to resolve. Regardless of the answer to that question, we find it appropriate to exercise our discretion to prevent these three virtually identically situated litigants from being treated in a needlessly disparate manner, simply because the District Court erroneously dismissed respondent's pre-AEDPA petition.

Accordingly, the writ of certiorari is dismissed as improvidently granted.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 06–313

———————

## DON ROPER, SUPERINTENDENT, POTOSI CORRECTIONAL CENTER, PETITIONER *v.* WILLIAM WEAVER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[May 21, 2007]

CHIEF JUSTICE ROBERTS, concurring in the result.

While I do not agree with all the reasons given in the *per curiam* for the discretionary decision to dismiss the writ as improvidently granted in this case, I do agree with that disposition.

# SUPREME COURT OF THE UNITED STATES

_____

No. 06–313

_____

## DON ROPER, SUPERINTENDENT, POTOSI CORRECTIONAL CENTER, PETITIONER *v.* WILLIAM WEAVER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[May 21, 2007]

JUSTICE SCALIA, with whom JUSTICE THOMAS and JUSTICE ALITO join, dissenting.

The Eighth Circuit held in this case that the Missouri Supreme Court had unreasonably applied clearly established precedent of this Court in concluding that certain statements made by the prosecutor during the penalty phase of respondent's capital trial did not rise to the level of a due process violation. *Weaver* v. *Bowersox*, 438 F. 3d 832, 839–842 (2006). As the Court says, *ante,* at 1, we granted certiorari to decide whether this holding comported with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. §2254(d)(1). We received briefing, and heard an hour's argument, on that question. Yet now the Court declines to answer it, dismissing the writ as improvidently granted.

The reason is that the Court has become "aware," *ante,* at 1, that respondent's post-AEDPA habeas petition was filed only because the District Court had erroneously dismissed an earlier petition filed prior to AEDPA's effective date, *ante,* at 3. Believing that respondent is "virtually identically situated" to two other litigants whose federal habeas petitions were not governed by AEDPA, and seeking to avoid "treat[ing the three] in a needlessly disparate manner . . . simply because the District Court

erroneously dismissed respondent's pre-AEDPA petition," the Court has decided to let stand the Eighth Circuit's flagrant misapplication of AEDPA, whether or not (and without deciding whether) AEDPA governs this case. *Ante,* at 4.

I fully agree with the Court that the District Court erred in dismissing respondent's pre-AEDPA petition, but that seems to me no justification for aborting this argued case. The District Court's previous error does not affect the *legal* conclusion that AEDPA applies to this new petition. And once it is admitted that AEDPA governs, the District Court's error should in no way alter our prior determination that the Eighth Circuit's application of AEDPA deserves our scrutiny. I discuss these two points in succession.

I

The Court provides no legal argument to support its assertion that respondent has a "colorabl[e]" claim, *ante*, at 4, that the prior erroneous dismissal renders AEDPA inapplicable to this case. Nor does respondent. See Brief for Respondent 39, n. 44. I am aware of no authority supporting the proposition that respondent is legally or equitably entitled to evade the collateral consequences of the District Court's error.

To begin with, any resort to equity would founder on respondent's failure to exhaust his appeals of the District Court's erroneous decision. See *ante,* at 3, n. The Court is untroubled by respondent's lack of diligence because, it says, further appellate review "would almost certainly have been futile." *Ibid.* The Court does not explain the basis for this pessimistic assessment, but the reason seems to be its belief that the District Court's error was not clear until our recent decision in *Lawrence* v. *Florida*, 549 U. S. ___ (2007). See *ante*, at 3 (describing *Lawrence* as "clarif[ying]" the exhaustion rule).

This seems to me quite wrong. The District Court's error was as apparent in 1996 as it was in *1966*. In *Fay* v. *Noia*, 372 U. S. 391, 435–438 (1963), we announced in no uncertain terms that a federal habeas petitioner need not seek certiorari in order to exhaust state-court remedies. "[N]o less an authority than Hart & Wechsler's The Federal Courts and the Federal System," *Massachusetts* v. *EPA*, 549 U. S. \_\_\_, \_\_\_ (2007) (slip op., at 17, n. 17), has long understood *Noia* to stand for that proposition. See P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart & Wechsler's The Federal Courts and the Federal System 1555 (3d ed. 1988); *id.*, at 1446 (4th ed. 1996); *id.*, at 1391 (5th ed. 2003). Indeed, *Lawrence*'s "clarifi[cation]" consisted of nothing more than citing the same old pages in *Noia*. See *Lawrence*, *supra,* at \_\_\_–\_\_\_ (slip op., at 4–5). It logically follows from *Noia* no less inescapably than from *Lawrence* that final disposition of a pending certiorari petition is also unnecessary to exhaust state-court remedies.

That the District Court had erred was no mystery to respondent in 1996. He correctly asked the District Court to reconsider its decision to dismiss his habeas action, and instead to stay it pending disposition of his petition for certiorari (which is the proper procedural way to handle such duplicative filings). See App. to Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 8–11 (hereinafter NACDL Brief). And he then filed a notice of appeal and unsuccessfully sought a certificate of appealability. See *id.*, at 1–7. Respondent (who theretofore had shown himself to be a highly capable *pro se* litigant, undoubtedly aware of the availability of en banc and certiorari review) simply gave up too early. There is no more reason in this case than in any other to excuse the failure to make use of all available means of review. Far from thinking that a petition for certiorari "would almost certainly have been futile," *ante,* at 3, n., I think it would

almost certainly have been successful. We give special
attention to capital cases (as today's delicate disposition
shows), and since the District Court's denial of a certifi-
cate of appealability occurred on August 1, 1996, see App.
to NACDL Brief 1, more than three months after AEDPA's
effective date, see *Woodford* v. *Garceau*, 538 U. S. 202, 204
(2003), it would have been obvious that our refusal to
correct the District Court's clear error would subject this
defendant's renewed request for federal habeas relief to
AEDPA's restrictions.

More fundamentally, however, even were the Court's
conjecture correct that diligence on respondent's part
would not have been rewarded, neither AEDPA nor any
principle of law would entitle him to relief from the collat-
eral consequences of an uncorrected judicial error. We
held in *Daniels* v. *United States*, 532 U. S. 374, 382 (2001)
that "[i]f . . . a prior conviction used to enhance a federal
sentence is no longer open to direct or collateral attack in
its own right because the defendant failed to pursue those
remedies while they were available (*or because the defen-
dant did so unsuccessfully*), then that defendant is without
recourse." (Emphasis added.) If a defendant is subject to
*additional jail time* because a prior erroneous conviction
went unreversed, surely respondent cannot complain
about the fact that the District Court's prior uncorrected
error has caused this habeas petition to be subject to
AEDPA's entirely reasonable restrictions.*

## II

There having been eliminated the possibility that
AEDPA is inapplicable to this case (and hence that the
question on which we granted certiorari and heard argu-

─────────

*Of course, even if some novel argument for the inapplicability of
AEDPA exists, respondent and the Court have not explained why the
claim has not been waived, given that this issue was raised *for the first
time* in respondent's merits brief in this Court. See *infra*, at 5–6.

ment is not presented) what possible justification remains for canceling our grant of certiorari after full briefing and argument? There disappears, along with the claim of AEDPA inapplicability, any substance to the Court's contention that respondent is "virtually identically situated" to the two other litigants with similar claims, and that he is being treated differently "simply because the District Court erroneously dismissed [his] pre-AEDPA petition." *Ante,* at 4. No. He is being treated differently because he, unlike them, seeks federal habeas relief by means of a petition filed after AEDPA's effective date. Is what happened here any less rational, any less fair, a basis for differential treatment than the random fact that one petitioner's habeas action was filed a day before AEDPA's effective date, and another petitioner's could not be filed until one day after? Would the Court entertain the thought that if those two petitions involved the same sort of closing argument by the same prosecutor, the second of them would have to be exempted from AEDPA? If anything, the differential treatment is more justified here, since the later filing was not randomly determined, but was likely the consequence of respondent's failure to exhaust his appeals.

The Court seems to be affected by a vague and discomforting feeling that things are different now from what they were when we granted certiorari. They are so only in the respect that we now know, as we did not then, that respondent's earlier petition was wrongfully dismissed. That fact has relevance neither to the law governing this case (as discussed in Part I, *supra*) nor to any equities that might justify our bringing to naught the parties' briefing and arguments, and the Justices' deliberations, on the question for which this petition was granted. But what makes today's wasteful action particularly perverse is that it is *the fault of respondent* that we did not know of the wrongful dismissal earlier. Before we granted plenary

review, respondent had *never* argued that AEDPA should not apply because of the District Court's error. He made no such claim either time he was before the Eighth Circuit. See Brief for Appellee in *Bowersox* v. *Weaver*, No. 99–3462, pp. xvii–xix; Brief for Appellee/Cross-Appellant in *Bowersox* v. *Weaver*, No. 03–2880 et al., p. 7. And, more significantly, he remained completely silent in his brief in opposition, despite his obligation to raise the issue under this Court's Rule 15.2. Indeed, even in respondent's merits brief, his argument (if it can be called that) consists of three sentences explaining the procedural history followed by a conclusory assertion, all buried in footnote 44 on page 39.

Respondent's delayed invocation of this issue has not only not been sanctioned; it has been rewarded. Had respondent raised his specious claim of AEDPA inapplicability in a timely manner, petitioner would have had the opportunity to blow it out of the water. Whether by way of calculus or through dumb luck, respondent's tardiness has succeeded in confounding the Court. We promulgated Rule 15.2 precisely to prohibit such sandbagging—and to avoid the ill effects that minimal briefing has on the quality of our decisionmaking, as perfectly demonstrated by this case. Respondent and his counsel should not profit from their flouting of this Court's Rules.

\* \* \*

I would thus answer the question on which we granted certiorari and received full briefing and argument. Because plenary review has convinced me beyond doubt that the Missouri Supreme Court did not unreasonably apply clearly established precedent of this Court, I would reverse the judgment of the Eighth Circuit.

A postscript is warranted in light of the unusual circumstances in which we dispose of this case. The greatest harm done by today's cancellation is not to the State of

Missouri, which will have to retry this murder case almost two decades after the original trial—though that is harm enough.  The greatest harm is that done to AEDPA, since dismissing the writ of certiorari leaves the Eighth Circuit's grossly erroneous precedent on the books.  (That precedent, by the way, cannot be explained away—as perhaps the Court's own opinion can—as the product of law-distorting compassion for a defendant wronged by a District Court's erroneous action.  As noted earlier, the Eighth Circuit was not informed of that erroneous action.  It presumably really believes that this is the way AEDPA should be applied.)  Other courts should be warned that this Court's failure to reverse the Eighth Circuit's decision is a rare manifestation of judicial clemency unrestrained by law.  They would be well advised to do unto the Eighth Circuit's decision just what it did unto AEDPA: ignore it.

　　For the foregoing reasons, I respectfully dissent.