Justice Scalia,
with whom
Justice Thomas and Justice Alito join, dissenting.
The Eighth Circuit held in this case that the Missouri Supreme Court had unreasonably applied clearly established precedent of this Court in concluding that certain statements made by the prosecutor during the penalty phase of respondent’s capital trial did not rise to the level of a due process violation. Weaver v. Bowersox, 438 F. 3d 832, 839-842 (2006). As the Court says, ante, at 599, we granted certiorari to decide whether this holding comported with the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. § 2254(d)(1). We received briefing, and heard an hour’s argument, on that question. Yet now the Court declines to answer it, dismissing the writ as improvidently granted.
The reason is that the Court has become “aware,” ante, at 599, that respondent’s post-AEDPA habeas petition was filed only because the District Court had erroneously dismissed an earlier petition filed prior to AEDPA’s effective date, ante, at 600, 601. Believing that respondent is “virtually identically situated” to two other litigants whose federal habeas petitions were not governed by AEDPA, and seeking to avoid “treating the three] in a needlessly disparate manner . . . simply because the District Court erroneously dis *603 missed respondent’s pre-AEDPA petition,” the Court has decided to let stand the Eighth Circuit’s flagrant misapplication of AEDPA, whether or not (and without deciding whether) AEDPA governs this case. Ante, at 601-602.
I fully agree with the Court that the District Court erred in dismissing respondent’s pre-AEDPA petition, but that seems to me no justification for aborting this argued case. The District Court’s previous error does not affect the legal conclusion that AEDPA applies to this new petition. And once it is admitted that AEDPA governs, the District Court’s error should in no way alter our prior determination that the Eighth Circuit’s application of AEDPA deserves our scrutiny. I discuss these two points in succession.
I
The Court provides no legal argument to support its assertion that respondent has a “colorabl[e]” claim, ante, at 601, that the prior erroneous dismissal renders AEDPA inapplicable to this case. Nor does respondent. See Brief for Respondent 39, n. 44. I am aware of no authority supporting the proposition that respondent is legally or equitably entitled to evade the collateral consequences of the District Court’s error.
To begin with, any resort to equity would founder on respondent’s failure to exhaust his appeals of the District Court’s erroneous decision. See ante, at 601, n. The Court is untroubled by respondent’s lack of diligence because, it says, further appellate review “would almost certainly have been futile.” Ibid. The Court does not explain the basis for this pessimistic assessment, but the reason seems to be its belief that the District Court’s error was not clear until our recent decision in Lawrence v. Florida, 549 U. S. 327 (2007). See ante, at 601 (describing Lawrence as “clarifying]” the exhaustion rule).
This seems to me quite wrong. The District Court’s error was as apparent in 1996 as it was in 1966. In Fay v. Noia, *604 372 U. S. 391, 435-438 (1963), we announced in no uncertain terms that a federal habeas petitioner need not seek certiorari in order to exhaust state-court remedies. “[N]o less an authority than Hart & Wechsler’s The Federal Courts and the Federal System,” Massachusetts v. EPA, 549 U. S. 497, 520, n. 17 (2007), has long understood Noia to stand for that proposition. See P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart & Wechsler’s The Federal Courts and the Federal System 1555 (3d ed. 1988); id., at 1446 (4th ed. 1996); id., at 1391 (5th ed. 2003). Indeed, Lawrence’s “clarification]” consisted of nothing more than citing the same old pages in Noia. See Lawrence, supra, at 333. It logically follows from Noia no less inescapably than from Lawrence that final disposition of a pending certiorari petition is also unnecessary to exhaust state-court remedies.
That the District Court had erred was no mystery to respondent in 1996. He correctly asked the District Court to reconsider its decision to dismiss his habeas action, and instead to stay it pending disposition of his petition for certiorari (which is the proper procedural way to handle such duplicative filings). See App. to Brief for National Association of Criminal Defense Lawyers as Amicus Curiae 8-11 (hereinafter NACDL Brief). And he then filed a notice of appeal and unsuccessfully sought a certificate of appealability. See id., at 1-7. Respondent (who theretofore had shown himself to be a highly capable pro se litigant, undoubtedly aware of the availability of en banc and certiorari review) simply gave up too early. There is no more reason in this case than in any other to excuse the failure to make use of all available means of review. Far from thinking that a petition for certiorari “would almost certainly have been futile,” ante, at 601, n., I think it would almost certainly have been successful. We give special attention to capital cases (as today’s delicate disposition shows), and since the District Court’s denial of a certificate of appealability occurred on August 1, 1996, see App. to NACDL Brief 1, more than three months *605 after AEDPA’s effective date, see Woodford v. Garceau, 538 U. S. 202, 204 (2003), it would have been obvious that our refusal to correct the District Court’s clear error would subject this defendant’s renewed request for federal habeas relief to AEDPA’s restrictions.
More fundamentally, however, even were the Court’s conjecture correct that diligence on respondent’s part would not have been rewarded, neither AEDPA nor any principle of law would entitle him to relief from the collateral consequences of an uncorrected judicial error. We held in Daniels v. United States, 532 U. S. 374, 382 (2001), that “[i]f... a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse.” (Emphasis added.) If a defendant is subject to additional jail time because a prior erroneous conviction went unreversed, surely respondent cannot complain about the fact that the District Court’s prior uncorrected error has caused this habeas petition to be subject to AEDPA’s entirely reasonable restrictions.*
II
There having been eliminated the possibility that AEDPA is inapplicable to this case (and hence that the question on which we granted certiorari and heard argument is not presented), what possible justification remains for canceling our grant of certiorari after full briefing and argument? There disappears, along with the claim of AEDPA inapplicability, any substance to the Court’s contention that respondent is “virtually identically situated” to the two other litigants with similar claims, and that he is being treated differently “sim *606 ply because the District Court erroneously dismissed [his] pre-AEDPA petition.” Ante, at 601-602. No. He is being treated differently because he, unlike them, seeks federal habeas relief by means of a petition filed after AEDPA’s effective date. Is what happened here any less rational, any less fair, a basis for differential treatment than the random fact that one petitioner’s habeas action was filed a day before AEDPA’s effective date, and another petitioner’s could not be filed until one day after? Would the Court entertain the thought that if those two petitions involved the same sort of closing argument by the same prosecutor, the second of them would have to be exempted from AEDPA? If anything, the differential treatment is more justified here, since the later filing was not randomly determined, but was likely the consequence of respondent’s failure to exhaust his appeals.
The Court seems to be affected by a vague and discomforting feeling that things are different now from what they were when we granted certiorari. They are so only in the respect that we now know, as we did not then, that respondent’s earlier petition was wrongfully dismissed. That fact has relevance neither to the law governing this case (as discussed in Part I, swpra) nor to any equities that might justify our bringing to naught the parties’ briefing and arguments, and the Justices’ deliberations, on the question for which this petition was granted. But what makes today’s wasteful action particularly perverse is that it is the fault of respondent that we did not know of the wrongful dismissal earlier. Before we granted plenary review, respondent had never argued that AEDPA should not apply because of the District Court’s error. He made no such claim either time he was before the Eighth Circuit. See Brief for Appellee in Bowersox v. Weaver, No. 99-3462, pp. xvii-xix; Brief for Appellee/Cross-Appellant in Bowersox v. Weaver, No. 03-2880 etc., p. 7. And, more significantly, he remained completely silent in his brief in opposition, despite his obligation to raise the issue under this Court’s Rule 15.2. Indeed, even in respond *607 ent’s merits brief, his argument (if it can be called that) consists of three sentences explaining the procedural history followed by a conclusory assertion, all buried in footnote 44 on page 89.
Respondent’s delayed invocation of this issue has not only not been sanctioned; it has been rewarded. Had respondent raised his specious claim of AEDPA inapplicability in a timely manner, petitioner would have had the opportunity to blow it out of the water. Whether by way of calculus or through dumb luck, respondent’s tardiness has succeeded in confounding the Court. We promulgated Rule 15.2 precisely to prohibit such sandbagging — and to avoid the ill effects that minimal briefing has on the quality of our decisionmaking, as perfectly demonstrated by this ease. Respondent and his counsel should not profit from their flouting of this Court’s Rules.
* * *
I would thus answer the question on which we granted certiorari and received full briefing and argument. Because plenary review has convinced me beyond doubt that the Missouri Supreme Court did not unreasonably apply clearly established precedent of this Court, I would reverse the judgment of the Eighth Circuit.
A postscript is warranted in light of the unusual circumstances in which we dispose of this case. The greatest harm done by today’s cancellation is not to the State of Missouri, which will have to retry this murder case almost two decades after the original trial — though that is harm enough. The greatest harm is that done to AEDPA, since dismissing the writ of certiorari leaves the Eighth Circuit’s grossly erroneous precedent on the books. (That precedent, by the way, cannot be explained away — as perhaps the Court’s own opinion can — as the product of law-distorting compassion for a defendant wronged by a District Court’s erroneous action. As noted earlier, the Eighth Circuit was not informed of that erroneous action. It presumably really believes that this is *608 the way AEDPA should be applied.) Other courts should be warned that this Court’s failure to reverse the Eighth Circuit’s decision is a rare manifestation of judicial clemency unrestrained by law. They would be well advised to do unto the Eighth Circuit’s decision just what it did unto AEDPA: ignore it.
For the foregoing reasons, I respectfully dissent.

Of course, even if some novel argument for the inapplicability of AEDPA exists, respondent and the Court have not explained why the claim has not been waived, given that this issue was raised for the first time in respondent’s merits brief in this Court. See infra, at 606-607.